UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL THOMAS,

    Petitioner,

Case No. 2:09-cv-12958

v.

HONORABLE STEPHEN J. MURPHY, III

BLAINE LAFLER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** (document nos. 1 & 8)**, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Jamal Thomas, a state inmate currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, has filed a habeas case under 28 U.S.C. § 2254. In his petition, he challenges his convictions for assault with intent to murder, first-degree home invasion, felonious assault, felon in possession of a firearm, and felony firearm. Thomas raises six grounds for relief. Respondent Blaine Lafler argues that two of Thomas's claims are procedurally defaulted and that all of the claims are without merit. For the reasons discussed, the Court will deny habeas relief.

**BACKGROUND**

Thomas's convictions arise from a home invasion at the home of Rodney Harrison in the City of Detroit. The Michigan Court of Appeals described the facts leading to Thomas's convictions as follows:

> In April 2005, Rodney Harrison was held hostage in his own home. Harrison was tricked into allowing a stranger, Larry Davidson, along with a little boy, into his back yard, on the pretense of looking for a baseball. After not finding the nonexistent baseball, Davidson asked Harrison if he could give Harrison his cellular telephone number in case the baseball was found. When Harrison refused, Davidson insisted on calling Harrison's home phone from his cell phone so that Davidson's number would be on Harrison's caller identification. Davidson

then asked Harrison to check his caller ID. Harrison went inside the house to do so. When Harrison turned around to walk back upstairs, Davidson had a handgun pointed at his head. Davidson had entered Harrison's home without Harrison's invitation or permission.

Davidson made a call on his cell phone and gave instructions, and soon after, defendant came into Harrison's house with a pistol. Davidson told defendant to keep his eyes on Harrison and to shoot Harrison if he made a sound, after which defendant told Harrison to sit on the sofa with his hands underneath his thighs, and threatened to kill Harrison if he moved or made a sound.

While defendant held Harrison at gunpoint, Davidson went upstairs to search the house. Davidson ransacked the house for 2½ hours, apparently looking for a large sum of money. Eventually, Harrison was handcuffed, blindfolded, his feet and legs tied together, and he was placed on his stomach. Harrison was beaten when he would not answer where the sought-after money was.

Later Harrison's wife Theresa came home; saw defendant with a gun in his hand, and fled to a neighbor's house from where she subsequently called the police. The police arrived to find Harrison lying handcuffed on the basement floor. Davidson and defendant had fled.

*People v. Thomas*, No. 270679, 2007 WL 4355431, at *1 (Mich. Ct. App. Dec. 13, 2007). The Michigan Court of Appeals' recitation of the facts is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

## PROCEDURAL HISTORY

Thomas was convicted by a jury in Wayne County Circuit Court of assault with intent to murder, Mich. Comp. Laws § 750.83, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), felonious assault, Mich. Comp. Laws, § 750.82, possession of a firearm by a felon, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. On May 12, 2006, he was sentenced to 50 to 100 years' imprisonment for the assault with intent to murder conviction, 26 to 50 years' imprisonment for the first-degree home invasion conviction, 28 to 48 months' imprisonment for the felonious assault conviction, 40 months to 60 years'

imprisonment for the possession of a firearm by a felony conviction, and two years' imprisonment for the felony-firearm conviction.

Thomas filed an appeal of right in the Michigan Court of Appeals. He raised these claims: (i) insufficient evidence supported assault with intent to murder conviction; (ii) insufficient evidence supported felonious assault conviction; (iii) trial court gave insufficient instruction on aiding and abetting theory; (iv) ineffective assistance of trial counsel; and (v) photographic identification procedure was unduly suggestive. The Michigan Court of Appeals affirmed Thomas's convictions. *Thomas*, 2007 WL 4355431. Thomas filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals and an additional ineffective assistance of counsel claim. The Michigan Supreme Court denied leave to appeal. *People v. Thomas,* 480 Mich. 1188 (2008).

Thomas then filed a habeas corpus petition. ECF No. 1. One month later, he filed an amended habeas petition. ECF No. 6. Lafler filed a motion to dismiss because Thomas had not exhausted state court remedies with respect to one of his claims. The Court denied the motion to dismiss because dismissal of the petition would jeopardize the timeliness of a future habeas petition. ECF No. 14. Instead, the Court held the habeas proceeding in abeyance to allow Thomas to return to state court to exhaust his unexhausted claim. *Id.*

Thomas filed a motion for relief from judgment in the trial court, arguing that his trial counsel was ineffective for failing to call an expert witness at trial. The trial court found that the claim was both defaulted and meritless and denied the motion. *See* 10/14/11 Opinion, *People v. Thomas*, No. 05-011901-01, ECF No. 24-1. The Michigan Court of Appeals and Michigan Supreme Court denied Thomas's applications for leave to appeal. *People v.*

*Thomas*, No. 309670 (Mich. Ct. App. Sept. 19, 2012), ECF No. 24-2; *People v. Thomas*, 493 Mich. 967 (2013), ECF No. 24-3.

Thomas then moved to reopen this proceeding, ECF No. 17, and filed an amended petition. ECF No. 16. The Court granted the motion and directed Lafler to file a supplemental answer, which he has done. ECF Nos. 18, 23.

Thomas raises the following claims in his amended habeas petition:

I. Petitioner's conviction for assault with intent to commit murder is not supported by sufficient evidence.

II. Petitioner's conviction for felonious assault is not supported by sufficient evidence.

III. The trial court committed reversible error in failing to properly instruct the jury in regards to the aiding and abetting theory.

IV. Petitioner was denied effective assistance of counsel when he failed to challenge the in-court identification, and was denied effective assistance of appellate counsel for failure to raise this issue.

V. The photo lineup was unduly suggestive, there was no independent basis for the in-court identification, the trial court committed reversible error and denied the petitioner due process by ruling both the lineup and in-court identification admissible. The prosecutor denied petitioner a fair trial by failing to disclose pretrial identification procedure and photos used.

VI. Petitioner was denied a fair trial and right to effective counsel, by failure to request the appointment of an expert on eyewitness identifications.

## STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'

*Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102–03 (internal quotation omitted).

5

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Allison v. Bell*, No. 2:10-cv-11570, 2011 WL 479968, at *2 (E.D. Mich. Feb. 7, 2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## DISCUSSION

I. <u>Sufficiency of the Evidence</u>

Thomas's first two claims concern the sufficiency of the evidence. He argues that the prosecution presented insufficient evidence to sustain his assault with intent to murder and felonious assault convictions.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he

6

is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). The intent to kill may be proven by inference from circumstantial evidence. *Warren*, 161 F.3d at 361. "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 756 (1999)). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation

in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich. at 758. "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App. 341, 352 (1992).

The Michigan Court of Appeals found that sufficient evidence was presented to establish Thomas's guilt both as a principal or as an aider and abettor. The state court reasoned:

> Evidence was presented showing that Rodney Harrison was held hostage in his home. Defendant pointed a .38 revolver at Harrison and told Harrison that he would kill him if he made a sound. While Larry Davidson ransacked the house for two and a half hours, defendant remained downstairs with Harrison, continuously pointing a gun directly at Harrison's head. Although no evidence was presented which showed that defendant actually harmed Harrison, the evidence showed that defendant pointed a gun at Harrison's head for several hours and threatened to kill him. "No actual physical injury is required for the elements of the crime to be established." *People v. Harrington*, 194 Mich. App. 424, 430; 487 N.W.2d 479 (1992). For the reasons stated, the prosecution presented sufficient evidence to show that defendant committed the offense of assault with intent to murder.
>
> The prosecution also presented sufficient evidence to prove that defendant committed the offense of assault with intent to murder as an aider and abettor.
>
> \*    \*    \*
>
> The evidence was sufficient to show that Davidson committed an assault with intent to murder and that defendant aided and abetted him in this offense. The evidence showed that Davidson tricked his way into Harrison's home for the purpose of stealing money from him and/or his stepson. Once Davidson was situated inside of Harrison's home, Davidson made a call informing someone that he was "in." Davidson then instructed that person to "park the car around the corner" and "come to the side door." Moments later, defendant entered the home with a .38 caliber gun. Defendant obeyed Davidson's orders to keep an eye on Harrison and to shoot Harrison if Harrison made a sound. Throughout the entire incident, Davidson and defendant threatened to kill Harrison several times, and Davidson kicked Harrison in the kidney and hit him with the butt of the gun.
>
> The evidence sufficiently showed that Davidson assaulted Harrison with an actual intent to kill, which, if successful, would make the killing murder. . . . The evidence further showed that defendant aided and abetted Davidson in this

8

>offense, *i.e.*, defendant had the criminal intent to aid, abet, procure, or counsel the commission of this offense.

*Thomas*, 2007 WL 4355431, at *2–3.

In light of the direct and circumstantial evidence presented, which supported Thomas's conviction for assault with intent to murder, the Michigan Court of Appeals' decision that a rational trier of fact could find the essential elements proven beyond a reasonable doubt was reasonable. Habeas relief is not warranted.

Thomas also argues that the prosecutor presented insufficient evidence to sustain his felonious assault conviction. The elements of felonious assault under Michigan law are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. Mich. Comp. Laws § 750.82; *People v. Avant*, 235 Mich. App. 499, 505 (1999).

Viewing the evidence in the light most favorable to the prosecution, the Michigan Court of Appeals held that sufficient evidence was presented to satisfy each of the elements of the crime of felonious assault beyond a reasonable doubt. The Michigan Court of Appeals relied on the following facts in reaching this conclusion: when Theresa Harrison entered her home it was in disarray; and when she saw Thomas, he said "damn she's here", and raised his gun up from his side, stating "she's getting away." *Thomas*, 2007 WL 4355431, at *3. The Michigan Court of Appeals held that these circumstances placed Theresa in reasonable apprehension of receiving an immediate battery. *Id.*

Although it did not cite the *Jackson* standard, the Michigan Court of Appeals clearly applied it. This Court cannot say that the state court's conclusion that the evidence presented was sufficiently contrary to or constituted an unreasonable application of federal law. Habeas relief is denied on this claim.

9

II. <u>Jury Instructions</u>

Thomas's next claim argues that the jury was not properly instructed on the theory of aiding and abetting because the trial court misspoke when giving the instruction.

Under Michigan law,

> [t]o support a finding that a defendant aided and abetted a crime, the prosecutor must show 'beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.'

*Thomas*, 2007 WL 4355431, at *4 (quoting *People v. Robinson*, 475 Mich. 1, 6 (2006)). The trial court, after correctly instructing the jury generally on the theory of aiding and abetting, instructed the jury that assault with intent to murder is a specific intent crime, and to convict a person as an aider and abettor of a specific intent crime, "the aider and abettor must have the specific intent to commit the offense, or he commits the offense knowing that the person that he is assisting has that particular *offense*." *Id.* (quotation omitted) (emphasis supplied). The trial court mistakenly substituted the word "offense" for "intent" during that instruction. The Michigan Court of Appeals held that, despite this error, the jury instructions considered in their entirety "were sufficient and protected defendant's rights." *Id.* The state court of appeals reasoned:

> "Error does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction." *People v. Canales*, 243 Mich. App 571, 574; 624 N.W.2d 439 (2000). Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *Canales*, *supra*, p 574, *citing People v. Reed*, 393 Mich. 342, 349-350; 224 NW2d 867 (1975). The jury was instructed that assault with intent to murder is a specific intent crime and to convict defendant of this crime, as an aider and abettor, they must find that defendant had the specific intent to commit this crime or he knew that the person he was assisting had that particular "offense." *Robinson*, supra, pp 6, 15. Because the aiding and abetting jury instructions fairly presented the issues for

10

> trial and sufficiently protected defendant's rights, defendant's claim is without merit. *Canales, supra*, p 574.

*Thomas*, 2007 WL 4355431, at *4.

"It is a fundamental Constitutional law that no one may be convicted of a crime absent proof beyond a reasonable doubt of every fact necessary to constitute that crime." *Glenn v. Dallman*, 686 F.2d 418, 420 (6th Cir. 1982). To show that a jury instruction violates due process, a habeas petitioner "must demonstrate both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (citations omitted). A petitioner is entitled to habeas relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The jury instruction "must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. A state court's finding that challenged jury instructions "adequately reflected the applicable state law and corresponding state charges" is binding on federal habeas review. *White v. Steele*, No. 14-5835, 2015 WL 6405704, at *5 (6th Cir. Oct. 22, 2015).

Here, the Court finds reasonable the Michigan Court of Appeals' finding that jury instructions, when viewed in their entirety, adequately informed the jury of the elements necessary to convict Thomas under an aider and abettor theory, including the intent

11

element. The Michigan Court of Appeals' decision that the instructions reflected state law is binding on this Court where Thomas has not shown that the misstatement was so flawed that it infected the entire trial and violated due process. Habeas relief is denied.

III. <u>In-Court Identification</u>

Thomas's fourth and fifth claims concern Rodney and Theresa Harrison's in-court identification of him. Thomas argues that the trial court should have suppressed testimony related to an unduly suggestive photographic lineup, and that the suggestive lineup tainted the in-court identification. He further argues that his trial attorney was ineffective for failing to challenge the in-court identification and that the prosecutor committed misconduct by failing to disclose the photograph used to identify petitioner.

Lafler argues that portions of these claims are procedurally defaulted. The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits of these claims.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S.Ct. 716, 718 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of

misidentification. *Neil v. Biggers*, 409 U.S. 188, 197–98 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (noting that due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Braithwaite,* 432 U.S. at 112–13. Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; see also *Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114.

The Michigan Court of Appeals held that the police were justified in using a photographic, rather than corporeal, lineup because Thomas refused to participate in a corporeal lineup. *Thomas*, 2007 WL 4355431, at *5–6. The Michigan Court of Appeals also found that the lineup was not unduly suggestive:

> When the photographic lineup was conducted, the Harrisons were given six photographs to choose from. After a review of the photographic lineups, we find that the lineups were not improperly conducted. To sustain a due process challenge, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." [*People v. Kurylczyk*, 443 Mich. 289, 302 (Mich. 1993)]. The photographic lineups were not suggestive by any means. The Harrisons were given a photo array and it was customary to assemble the photographs in a manner to create similar circumstances and people. Because the other persons used to comprise the lineups had physical characteristics that were similar to defendant, there was not a substantial likelihood of misidentification. *Kurylczyk, supra*, p 302. Defendant's claim is meritless.

*Id.* at *6.

The Michigan Court of Appeals also held that the Harrisons had an independent basis for their in-court identifications. *Id.* In reaching this conclusion, the state court cited the extended time Rodney Harrison had to observe Thomas during the incident and Theresa Harrison's close proximity to Thomas. The state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, even assuming that the identification procedure was impermissibly suggestive, Thomas has failed to show the identification was not reliable. As the Michigan Court of Appeals noted, both Rodney and Theresa Harrison had the opportunity to observe Thomas. Theresa was close enough to Thomas to describe his clothing and testified that she saw him in a clear light. Rodney had ample opportunity to observe Thomas over an extended period of time in his home. Given these circumstances, the Court concludes Thomas fails to show that the identification was unreliable.

Thomas also argues that the prosecutor denied him his right to a fair trial by failing to disclose the existence of a pretrial identification procedure and the photograph used to identify Thomas. Thomas provides no support for this argument and there is no indication in the record before the Court that the defense lacked information regarding the pretrial identification procedure or access to the photograph of Thomas used in the photographic lineup. This claim is meritless.

Thomas next argues that his attorney was ineffective in failing to move to suppress the photographic lineup or argue that the Harrisons did not have an independent basis for their in-court identifications of Thomas. To establish that he received ineffective assistance

of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

Thomas challenges his attorney's handling of the photographic lineup and in-court identification testimony. The Michigan Court of Appeals held that the photographic lineup was not improper and that, in any event, each witness had an independent basis for the identification of Thomas as the perpetrator. Thomas has not shown that the state court's disposition of these issues was contrary to or an unreasonable application of Supreme Court precedent. He, therefore, cannot show that his attorney was ineffective in failing to

15

challenge a valid photographic lineup or failing to move to suppress the in-court identifications. Habeas relief is denied on this claim.

IV. Appointment of Expert Witness

Finally, Thomas argues that his trial attorney was ineffective in failing to move for appointment of an expert witness on eyewitness identification. The trial court denied this claim in its order denying Thomas's motion for relief from judgment. ECF No. 24-1. The trial court concluded that Thomas failed to show what an expert witness's testimony would have been and failed to show that he was prejudiced by the absence of an expert witness.

"No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined the witnesses about the problems with their identification. Thomas was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of an expert witness on identification, where counsel effectively cross-examined the witnesses' identification testimony.

Similarly, Thomas has offered nothing other than speculation that an expert witness could have been obtained to provide testimony on the issue of eyewitness testimony or that such a witness would testify favorably on his behalf. For the reasons explained in the trial court's opinion, the Court agrees that Thomas has failed to establish that he was denied the effective assistance of counsel based on his attorney's failure to present expert testimony regarding eyewitness identification. Habeas relief is denied.

V. Appeal

16

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability. The Court also concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal as any appeal would be frivolous and cannot be taken in good faith. See Fed. R. App. P. 24(a).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Petition for Habeas Corpus (document nos. 1 & 8) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

**SO ORDERED**.

                        s/Stephen J. Murphy, III  
                        STEPHEN J. MURPHY, III  
                        United States District Judge

Dated: August 17, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 17, 2016, by electronic and/or ordinary mail.

                        s/Carol Cohron  
                        Case Manager